IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

INLAND MORTGAGE CAPITAL          )
CORPORATION,                     )
                                 )
          Plaintiff,             )
                                 )
     v.                          )     No.  11 C 6482
                                 )
CHIVAS RETAIL PARTNERS, LLC,     )
et al.,                          )
                                 )
          Defendants.            )

MEMORANDUM OPINION AND ORDER

Even in the time before Noah's flood when this Court was
still in the private practice of law, it regularly urged the
other partners and associates in its small law firm (whether
engaged in the transaction practice or in litigation) to place
the question of choice of law at the very top of their mental
checklists.  That principle is no less true today, and this case
provides a graphic demonstration of its potency.

Here Inland Mortgage Capital Corporation ("Inland") has sued
Arizona limited liability company Chivas Retail Partners, LLC,
Tim Dollander (both as an individual and as Trustee of the TJD
Separate Property Trust) and Walter Brown, Jr. (both as an
individual and as Trustee of Walter J. Brown, Jr. Revocable
Trust)(collectively "Guarantors") through what it has labeled as
its Complaint for Breach of Guaranty Agreement, invoking federal
subject matter jurisdiction on diversity of citizenship grounds.
That clear message as to the nature of this action is reinforced

by the attachment of the parties' June 6, 2007 Loan Guaranty

Agreement ("Guaranty"), Paragraph 26 of which begins:

> This Guaranty Agreement has been made and delivered by
> the undersigned in the State of Illinois and shall be
> construed for all purposes and enforced in accordance
> with the laws of the State of Illinois....

Yet Guarantors seek dismissal of the action on claim

preclusion grounds and issue preclusion grounds under Georgia law

in attempted reliance on a mortgage foreclosure action pursued in

that state against the real estate that secured the $59.670

million loan that is the subject of the Guaranty. This opinion

will first address why Inland is right (and Guarantors are thus

dead wrong) by reason of Guarantors' detailed and unequivocal

undertakings in the Guaranty, and it will then turn to the bogus

nature of Guarantors' efforts to extricate themselves from the

toils of those voluntary and deliberate contractual commitments.

As to the Guaranty itself, in light of the multimillion

dollar amount of the underlying loan it is hardly surprising that

the Guaranty document contains all of the provisions typical of

unconditional guaranties in major commercial

transactions--provisions that unambiguously sew up the express

personal liability of Guarantors for the indebtedness that is the

subject of the guaranty. Lest there be any doubt in that

respect, the Guaranty itself is attached to and made a part of

this opinion, just as it has been made an integral part of

Inland's Complaint. And without seeking to be exhaustive, the

following sampling demonstrates why Guarantors' effort to squirm out from under their deliberately undertaken personal obligations is totally unpersuasive:

1.  At the outset, two of the Guaranty's recitals confirm the intent of the parties:

> WHEREAS, Lender is willing to extend the Loan only on the condition that Guarantor,[1] irrevocably and unconditionally, fully guarantees to Lender the full and prompt payment and performance of the Obligations (defined below) as herein provided; and

> WHEREAS, Guarantor is willing to irrevocably and unconditionally, fully guarantee the Obligations, pursuant to the terms of this Guaranty Agreement.

2.  Guaranty §2 sets out the particulars of the obligations under the Loan Documents of the "Borrower" (Harbins Crossing TC, LLC ["Harbins"]), whose "full, complete and punctual observance, payment and performance and satisfaction" of those obligations is "absolutely, unconditionally, and irrevocably guarantee[d] by Guarantors."

3.  To scotch precisely the kind of evasive tactics now essayed by Guarantors, Guaranty §2 at page 3 contains a paragraph that begins "All of the remedies set forth herein

---

[1]  [Footnote by this Court]  Although the Guaranty employs "Guarantor" as a singular collective noun, Guaranty ¶25 confirms the joint and several liability of the several Guarantors.  This opinion thus speaks of them in plural rather than singular terms.

and/or provided for in any of the other Loan Documents or at

law or equity" and that then expressly negates any

contention based on election-of-remedies principles.

4.  Guaranty §9 includes express waivers by Guarantors,

among other things, (1) of the pursuit or exhaustion of

remedies against the Borrower as a condition precedent to

proceeding against Guarantors under the Guaranty (subsection

(a)) and (2) of "any principle or provision of law,

statutory or otherwise, which is or might be in conflict

with the terms and provisions of this Guaranty Agreement"

(subsection (g)).  Those waivers are undertaken "[t]o the

extent permitted by law," and on that score such cases as

<u>Chrysler Credit Corp. v. Marino</u>, 63 F.3d 574, 577 (7th Cir.

1995) confirm that Illinois law--specifically controlling

under the Guaranty--gives full play to freedom-of-contract

principles in enforcing such express waivers.[2]

5.  Guaranty §9's broad expanse of waivers also

---

[2]  <u>Chrysler Credit</u> is only exemplary of the Illinois
caselaw, applied by both the state and federal courts, that
consistently enforces waivers such as those contained in the
Guaranty.  Guarantors attempt to respond by leaning on the weak
reed (really no reed at all) of what <u>In re L&S Indus., Inc.</u>, 989
F.2d 929, 934 (7th Cir. 1993)(citing cases decided in 1860 and
1893) speaks of as a "general rule" and as what "is usually a
good defense in a later suit against a guarantor"--but such
"glittering generalities" (a term sometimes attributed to the
noted semanticist Alfred Korzybski) cannot of course override the
express contractual waivers that were subscribed to by
Guarantors.

includes another provision that might well have been written

for the present case, under which Guarantor:

>(c)  waives all rights and defenses that
>Guarantor may have because the Borrower's debt is
>secured by real property, which means, among other
>things:
>
>*          *          *
>
>(ii)  If Lender forecloses on any real
>property collateral pledged by Borrower or
>anyone else:
>
>>(A)  The amount of the debt may be
>>reduced only by the price for which that
>>collateral is sold at the foreclosure
>>sale, even if the collateral is worth
>>more than the sale price; and
>>
>>(B)  Lender may collect from Guarantor
>>even if Lender, by foreclosing on the
>>real property collateral, has destroyed
>>any rights Guarantor may have to collect
>>from Borrower or anyone else.
>
>This is an unconditional and irrevocable waiver of
>any rights and defenses Guarantor may have because
>Borrower's debt is secured by real property.

In an obvious effort to make the worse appear the better

cause, Guarantors attempt to call upon the unsuccessful effort by

Inland to obtain confirmation of the foreclosure sale that it

pursued in Georgia.  But that effort by Guarantors is at war not

only with the parties' agreement that Illinois law provides the

rules of decision under the Guaranty, but also with the limited

scope that Georgia caselaw gives to summary confirmation

proceedings there, as confirmed by caselaw that Guarantors'

counsel themselves cite--as <u>Dorsey v. Mancuso</u>, 547 S.E.2d 787,

789 (Ga. App. 2001)(citing several earlier cases) states:

> Therefore, by law, a confirmation proceeding is limited
> to determining whether the sale was properly advertised
> and brought the fair market value of the land.

As reflected by this opinion's earlier quotations from and
references to the Guaranty, a negative answer or a nonanswer to
that "whether" question has no impact at all on Inland's rights
and remedies against Guarantors--indeed, <u>Dorsey</u> itself rejected a
litigant's effort to invoke collateral estoppel because of the
narrow function of the confirmation proceeding.[3]

So much, then, for the straightforward enforceability of
Guarantors' express and voluntarily undertaken commitments from
which they strive to escape.  But it is worth adding that the
futility, as well as the empty content, of those efforts at
escape is really underscored by a further look at those efforts
on their own.

On that score, Guarantors' just-filed Reply in attempted
support of its dismissal motion carries its own death warrant.
In principal support of Guarantors' fallacious attempt to portray
Georgia law as controlling, their Reply's Argument at 2 quotes at
length from the Section 57 Legal Construction provision of the
single-spaced, 32-page Deed To Secure Debt and Security

---

[3] Guarantors' counsel try to put a different read on the
<u>Dorsey</u> case, but in doing so they miss the critical and
substantively dispositive point that the limited scope of such
confirmation proceedings under Georgia law totally negates their
efforts to bring claim preclusion or issue preclusion into play.

Agreement--but what Guarantors' counsel impermissibly gloss over (or more accurately ignore entirely) is that the language that they quote speaks of the enforcement by lender Inland "of its foreclosure and provisional remedies against <u>Borrower</u> under this Security Deed and the Other Loan Documents," just as it goes on to specify that "<u>Borrower</u> shall comply with applicable law in the State of Georgia...." It is those obligations that are followed (understandably) by the provision that Georgia law "shall govern with respect to the creation, perfection and priority of the lien, security title and security interest of this Security Deed and the Other Loan Documents..."--understandably because those relate to Georgia land.

But who is the "Borrower"? It is Harbin, <u>not</u> the Guarantors. Both that lengthy document and the lengthy promissory note secured by that Deed are signed by Harbin and <u>not</u> by Guarantors. What Guarantors instead agreed to do, in compliance with the requirements that Inland wanted as additional assurances of payment of the loan, was to enter into a wholly separate document--the Guaranty--in their individual capacities, undertaking personal responsibility for the payment of the loan entirely independent of and in addition to the Borrower's obligations.

In what may approach the height of irony, Guarantors conclude their Reply by characterizing Inland's position as "a

final desperate attempt to enforce the guaranty."[4]  Instead that

pejorative label "desperate attempt" fits Guarantors' pretense

that the ironclad fetters places on them by the Guaranty's

numerous provisions--those cited here and others as well--do not

exist.  Simply put, wishing does not make it so.[5]

    In sum, Guarantors' Rule 12(b)(6) motion to dismiss Inland's

Complaint must be and is denied, and Guarantors are ordered to

file their answer to the Complaint on or before February 10,

2012.  Indeed, this Court's review of the parties' competing

submissions suggests a strong unlikelihood  that there are

factual differences that would preclude a swift judgment as a

matter of law in Inland's favor.[6]  If such is indeed the case, so

that the only dispute between the litigants is legal and not

---

[4]  Is it an accident or a Freudian slip that leads counsel
to begin "guaranty" with a lower-case "g," as though to wipe away
the fact that the Guaranty is a formal document that nails shut
the coffin of personal liability on the part of Guarantors?

[5]  Just a few words should be added as to the Reply's
criticism of the opinion issued by this Court's colleague
Honorable Samuel Der-Yeghiayan in another case dealing with
Georgia's confirmation statute.  As Guarantors' counsel correctly
point out, and as this Court regularly states in the course of
its oral and written rulings, our Court of Appeals regularly (and
properly) reminds us that District Judges' opinions and decisions
are nonprecedential.  This Court has thus not troubled itself to
parse whatever similarities and differences may exist as between
Judge Der-Yeghiayan's case and this one--this opinion stands on
its own.

[6]  This Court is of course mindful of the possibility that a
disagreement on that score as a legal (rather than factual)
matter might be taken up on appeal.  But that prospect does not
alter what is said next in the text.

factual in nature, both Guarantors and their lawyers ought to pay heed to the hazards posed by Rule 11(b) and 28 U.S.C. Section 1927 by any undue prolongation of the dispute.

_____
Milton I. Shadur
Senior United States District Judge

Date: January 25, 2012