# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **INLAND MORTGAGE CAPITAL CORPORATION**, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 11 C 6482<br>) |
| **CHIVAS RETAIL PARTNERS, LLC**, et al., | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER[1]

Inland Mortgage Capital Corp. ("Inland") loaned Harbins Crossing TC, LLC ("Harbins") $59,670,000 (I. St. ¶8). Harbins used the money to build a retail shopping center in Gwent County, Georgia (a part of metropolitan Atlanta) (id. ¶10). Inland secured the loan by executing a security deed on the property (id. ¶9). Chivas Retail Partners, LLC, the TJD Separate Property Trust and the Walter L. Brown Jr. Revocable Trust (collectively "Guarantors") executed a Loan Guaranty Agreement ("Guaranty Agreement") with Inland (id. ¶11).

Harbins defaulted on the loan (I. St. ¶13), so Inland foreclosed on the property and put it up for auction (id. ¶15). Inland itself won the auction with a bid of $7 million (id. ¶16). Inland then commenced what is called a "confirmation proceeding" in a Georgia state court. Because Georgia is a non-judicial-foreclosure state, lenders can foreclose on mortgaged property without court intervention. When the property does not fetch the full amount of the loan, the lender is

---

[1] Any citations to Inland's reply memorandum in support of its current motion take the form "I. R. Mem. --." Any citations to Guarantors' original memorandum take the form "G. Mem. --." Citations to Inland's LR 56.1 statement take the form "I. St. ¶--," while citations to Guarantors' LR 56.1 statement take the form "G. St. ¶--."

left with a deficiency: the difference between the amount outstanding on the debt and the successful bid for the foreclosed property.[2]

Non-judicial foreclosures are fast and efficient, because the process does not require court proceedings. But during the Great Depression lenders abused the lack of court oversight, not advertising foreclosure auctions and then underbidding for the properties, leaving the lender with a windfall and the debtor with an excessive obligation (Zachary Kimball and Paul Willed, U.S. Mortgage Foreclosure Law, New Palgrave Dictionary of Economics (2012 online ed.) §3.3). Georgia created confirmation proceedings to lend judicial oversight to the foreclosure process (Harris & Tilley, Inc. v. First Nat'l Bank of Cartersville, 276 S.E.2d 137, 140-41 (Ga. App. 1981)). To obtain a deficiency judgment against a borrower, a lender must first receive confirmation from a court that the lender followed proper sale procedures and obtained the fair market value for the property (id.).

In this instance Inland's confirmation action in the Georgia court named both Harbins and Guarantors as respondents. But after the Georgia court refused to confirm Inland's sale (G. St. ¶17), Inland brought this lawsuit against Guarantors[3] for breach of the Guaranty Agreement and promptly moved for summary judgment. Guarantors contend that this action is blocked by the

---

[2] Depending on the terms of the loan transaction, that deficiency may or may not give rise to a judgment against the borrower -- and perhaps, as in this instance, against guarantors of the loan.

[3] Chivas is a limited liability company. Its members are Tim S. Dollander ("Dollander"), the TJD Separate Property Trust and the Walter L. Brown Jr. Revocable Trust. Dollander is a citizen of Arizona. Trusts have the citizenship of their trustees (Hicklin Eng'g L.C. v. Bartell, 439 F.3d 346, 348 (7th Cir. 2006). Dollander is the trustee of the TJD Separate Property Trust. Walter L. Brown Jr., a citizen of Arizona, is the trustee of the Walter L. Brown Jr. Revocable Trust. Inland is a Maryland corporation with its principal place of business in Illinois. So there is complete diversity of citizenship.

Georgia court's rejection of Inland's confirmation petition, but Inland counters that Guarantors waived any such defense in the Guaranty Agreement.

## Choice of Law

Inland and Guarantors waste substantial space in their memoranda debating which state's law controls: Inland says Illinois, while Guarantors say Georgia. Inland is correct as to the meaning and effect of the Guaranty Agreement ¶26, which states that the Guaranty Agreement "shall be construed for all purposes and enforced in accordance with the laws of the State of Illinois." On the other side of the coin, Guarantors are correct as to the effect of the Georgia confirmation proceeding (subject, of course, to the possibility that the later-discussed waiver provision in the Guaranty Agreement may trump that effect). As <u>Marrese v. Am. Acad. of Orthopaedic Surgeons</u>, 470 U.S. 373, 380 (1985) teaches relevant to the Georgia confirmation proceeding:

> The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States...as they have by law or usage in the courts of such State...from which they are taken." 28 U.S.C. §1738. This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered.

## Effect of the Georgia Confirmation Proceeding

Guarantors argue that the Georgia confirmation proceeding erased the deficiency or eliminated a necessary condition for Inland to collect on a deficiency. Guarantors repeat that contention twice more in their original Memorandum: once under the rubric of claim preclusion and once under the rubric of issue preclusion. But both preclusion arguments are rehashes of Guarantors' first argument, except that instead of arguing that the confirmation proceeding blocks

the deficiency claim, Guarantors say that Inland already had the chance to litigate whether it could pursue a deficiency.

There's no need to traipse through each iteration of that position. This Court must instead answer two questions: what did the confirmation proceeding decide and does the Guaranty Agreement require Guarantors to pay the outstanding debt given the outcome of the confirmation proceeding?

Confirmation proceedings are creatures of statute, and so the statute is the best place to turn to understand their scope (Ga. Code. Ann. §44-14-161):

> (a) When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.
>
> (b) The court shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale.
>
> (c) The court shall direct that a notice of the hearing shall be given to the debtor at least five days prior thereto; and at the hearing the court shall also pass upon the legality of the notice, advertisement, and regularity of the sale. The court may order a resale of the property for good cause shown.

Hence the court determines in Georgia confirmation proceedings whether "the property sold brought its true market value" and also "the legality of the notice, advertisement, and regularity of the sale." Inland says that the Georgia court did not determine whether Inland could proceed with its claim on the Guaranty Agreement, which is after all the contract between it and the Guarantors. Guarantors urge that the Georgia court did more than that: It assertedly

eliminated a condition essential to Inland's collection of a deficiency. According to Guarantors, this Court cannot award Inland a deficiency judgment without collaterally attacking the Georgia court's judgment.

But even apart from what the parties expressly agreed on that score in the Guaranty Agreement (of which more a bit later), that assumes that the Georgia court actually decided whether Inland could collect on a deficiency. It did not. Here is the full text of the Georgia court's order (filed as G. St. Ex. B):

**ORDER AND JUDGMENT**

> THIS CASE having come before this Court on November 9, 2010 for hearing on Petitioner's Report of Foreclosure Sale and Application for Confirmation Thereof ("Petition for Confirmation"), all parties having been afforded the opportunity to present evidence and argument in support of their respective positions, and the Court having heard and considered such evidence and argument, it is hereby
>
> ORDERED AND ADJUDGED that the Petitioner has failed to meet its statutory burden under O.C.G.A. §44-14-161 for confirming the foreclosure sale in issue, and the Petition for Confirmation is therefore DENIED. Petitioner's request for a resale of the subject property is also DENIED.

There is no finding that a deficiency does not exist or that Inland can't pursue one. All that the court decided was that the sale was not properly conducted. And if there were any question that the Georgia court's decision was limited to not confirming the validity of the sale, the statute itself firmly answers it. Subsection (a) does not authorize Georgia courts to decide whether collection on a deficiency is appropriate -- it merely makes the pursuit of such a remedy under the authority of that statute a consequence of other findings that the court must make. Subsection (c) directs the court to "pass upon the legality of the notice, advertisement, and

regularity of the sale" but not on the existence or enforceability of a deficiency.[4] So Guarantors and Inland have not litigated (and the Georgia court did not decide) whether Guarantors owed Inland the balance on the loan.

But as Guarantors would have it, even if the Georgia court did not decide whether they owed a deficiency, that is the effect of the decision, and this Court is bound to honor it. To that end Guarantors quote Gilbert v. Arneson, 235 S.E.2d 647, 648 (Ga. App. 1977):

> The obligation of the surety is accessory to that of the principal, and if the latter from any cause becomes extinct, the former shall cease.

In other words, if there's no underlying debt there's nothing to guarantee, and the Guarantors are assertedly off the hook.

### Effect of the Guaranty Agreement

But that house of cards, sought to be erected by Guarantors, collapses in a heap under the weight of the express waivers that they committed to in the Guaranty Agreement. Here is the most specific of those waivers, set out as part of Guaranty Agreement ¶9 (emphasis added)(other waivers in the Guaranty Agreement also arguably apply here but do not require discussion):[5]

> [T]he Guarantor hereby waives any defense to the recovery by Lender [Inland] against the Guarantor of any deficiency after such action,[6] notwithstanding any

---

[4] To be more precise, under Subsection (a) the absence of "an order of confirmation and approval thereon" forecloses (bad pun intended) Inland's obtaining of a deficiency judgment under the auspices of the Georgia courts. But as indicated earlier and discussed in the next section of this opinion, the very different question whether this Illinois-based lawsuit can proceed to a deficiency judgment before this Court is a function of the litigants' voluntarily undertaken contractual undertakings in the Guaranty Agreement.

[5] This Court's January 25, 2012 ruling on Guarantors' motion to dismiss attached a complete copy of the Guaranty Agreement.

[6] [Footnote by this Court] This quoted language follows a provision that grants Inland the unfettered power to "exercise any right or remedy which Lender has available to it, including,
(continued...)

> impairment or loss of any right of deficiency or other right or remedy against Borrower [Harbins].

That waiver guts Guarantors' attempted defense. In that provision they expressly agreed that they would pay any post-sale deficiency even if Inland had lost its right to collect from Harbins. So even if the decision of the Georgia court operated to cut off Harbins' debt to Inland, Guarantors' obligation to Inland remains intact by virtue of the waiver in the Guaranty Agreement. Put differently, the waiver in the Guaranty Agreement means that Guarantors' obligation was no longer "accessory to that of the principal." Guarantors deliberately placed themselves on the hook whether or not Inland could collect from Harbins--that was their bargain in reliance on which Inland paid out nearly $60 million. Even if Inland's failure to obtain confirmation blocked its ability to collect on a deficiency from Harbins, Guarantors' contractual liability remains.

Guarantors contend that while Inland may have been able to collect on a deficiency before foreclosing and seeking confirmation, once Inland started that process it was barred from pursuing other remedies, such as this suit sounding in contract (G. Mem. 12). But a second provision in the Guaranty Agreement (this time part of its ¶9(c)) effectively waives application of the Georgia confirmation statute altogether:

> (ii) If Lender forecloses on any real property collateral pledged by Borrower or anyone else:
>
> (A) The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price....

---

[6](...continued)
but not limited to, judicial foreclosure, exercise of rights or power of sale without judicial action," and so on.

Recall that the Georgia confirmation statute instructs that a court "shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale." But the just-quoted contractual provision says that Guarantors must pay the amount of a deficiency even if the collateral fetches a below-market price in a foreclosure sale. Because that specifically-contemplated situation would mean that the sale <u>could</u> <u>not</u> be confirmed under the Georgia law, it is beyond cavil that Guarantors nonetheless agreed to pay the contractually-defined amount of the deficiency in that scenario.

In Guarantors' view, Inland could collect from them on a deficiency if it failed to seek confirmation but not if it sought confirmation and lost in court. But that position is at war with Guarantors' contractual promise, in which they specifically agreed to pay the amount of a deficiency even when the statutory predicate for confirmation (a sale for full market value) was absent. That a Georgia court confirmed that the sale did not fetch fair market value does not give Guarantors a license to welch on their promise.[7]

As a last line of defense, Guarantors point to the fact that the series of waivers in the Guaranty Agreement begins with a caveat: They operate only "[t]o the extent permitted by law." Guarantors think that somehow limits the waivers. They argue that Inland cannot bring claims barred by issue preclusion or claim preclusion, and the Georgia court's decision is entitled to full faith and credit in Illinois. Those truisms, however, don't assist Guarantors. As already

---

[7] This Court recognizes that the unequivocal language of the Guaranty Agreement makes Inland's decision to seek confirmation in the Georgia foreclosure case seem both puzzling and pointless. Why do so when confirmation is not necessary to enforce the Guaranty Agreement? Inland has never explained that in the course of its submissions, but then perhaps that's because it does not need to.

explained, Inland is neither relitigating issues or claims nor undermining the Georgia court decision.

"To the extent permitted by law" connotes that the waivers themselves could be limited by some underlying legal principle of Illinois law[8]--for example, buyers of residential real estate cannot waive a seller's duties under the Illinois Residential Real Property Disclosure Act (Curtis Inv. Firm. Ltd. P'ship v. Schuch, 321 Ill. App. 3d 197, 199-200, 746 N.E.2d 1233, 1235-36 (3d Dist. 2001). But Guarantors don't point to any Illinois law (or, for that matter, any Georgia law either) that bars either a waiver of confirmation or a waiver of the rule that a guarantor's obligation is contingent on the obligation of the borrower. Guarantors were free to waive the protections of Georgia's confirmation statute (see Chrysler Credit Corp. v. Marino, 63 F.3d 574, 577 (7th Cir. 1995)). They did so, and now those waivers must be enforced against them.

Inland says that as of June 14, 2012 (the date on which it filed its reply memorandum) Guarantors owed $16,180,835.12 (I. R. Mem. 10). That amount is said to grow by $5,278.31 in interest each day (id.). In an earlier oral ruling this Court gave Guarantors the opportunity to file a surreply reflecting their damages calculation. Guarantors are ordered to file that submission on or before August 20, 2012, so that this Court can then determine whether Inland's calculations are materially disputed or can be decided on summary judgment.

## Conclusion

Inland's motion for summary judgment is granted as to Guarantors' liability, with the question of damages reserved for determination after Guarantors file their surreply memorandum.

---

[8] It would be a highly dubious reading of that language, when set out in a contract containing an express Illinois choice of law provision, as looking to what the law of some other jurisdiction permits or does not permit.

This action is set for a next status hearing at 8:45 a.m. August 23, 2012.

　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Milton I. Shadur
　　　　　　　　　　　　　　　　Senior United States District Judge

Date:  August 3, 2012